UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

CHRIS DAVIS,

                  Plaintiff,

v.

UNKNOWN BROWN et al.,

                  Defendants.

_____/

Case No. 2:23-cv-223

Honorable Robert J. Jonker

## OPINION

      This is a civil rights action brought by a state prisoner under 42 U.S.C. §§ 1983 and 1985. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

      Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events

about which he complains occurred at that facility. Plaintiff sues Wellness Health Care and the following KCF officials and medical personnel: Warden Unknown Brown, Deputy Warden Unknown Storey, and Nurse Wendy Jamros. (Compl., ECF No. 1, PageID.1, 2.)

In Plaintiff's complaint, he alleges that in late 2020, "after suffering from injuries sustained from contracting COVID-19, Plaintiff was placed on 'chronic-care' status for treatment dealing with different health concerns."[1] (*Id.*, PageID.3.) Plaintiff states that he "experienced severe high blood pressure, hypertension, dizziness, headaches, breathing difficulties, severe chest pains, joint and muscle pains, loss of circulation to his right arm, chest, shoulders, and neck area, causing the Plaintiff to suffer excruciating pain in all of those extremities." (*Id.*) At an unspecified time, "Plaintiff accumulated a growth on his neck that was triggered with excruciating pain when Plaintiff moved his body," and the pain occurred "from his neck down through the right side of his chest, neutralizing his movements on the upper right side of his body." (*Id.*) During an unspecified period of time, "Plaintiff submitted several Health Care kites to Health Care, complaining about his neck and chest pains, . . . [and] how they were affecting his mobility." (*Id.*)

At an unspecified time in 2022, Plaintiff had an appointment with a non-party doctor, who told Plaintiff, "I am going to order you an MRI to see what is ailing you." (*Id.*) Plaintiff states that the MRI appointment "was put off for a length of time, in which Plaintiff continued to suffer." (*Id.*) In March of 2023, "Plaintiff was taken for an MRI . . . where he could not be treated due to claustrophobia." (*Id.*)

Subsequently, at an unspecified time, Plaintiff "explained to [Defendant] Jamros that he was claustrophobic, and she claimed to have understood this to be the case, and said directly to the Plaintiff that she would reschedule Plaintiff for an adequate MRI." (*Id.*) Thereafter, Plaintiff "was

---

[1] In this opinion, the Court corrects the capitalization in quotations from Plaintiff's complaint.

sent back to the same exact hospital" for an MRI with "the exact same MRI machine, causing the Plaintiff to hyperventilate when he was faced with the same situation that caused his claustrophobia before." (*Id.*)

At Plaintiff's next appointment with Health Care at KCF, a non-party nurse showed Plaintiff a picture of an "'up-right' MRI." (*Id.*) Plaintiff told the non-party nurse that "he believed he could go through with the procedure on that particular MRI machine because he did not believe he would feel closed in." (*Id.*, PageID.3–4.)

On June 29, 2023, "Plaintiff was taken to Otsego Hospital," where he believed he would be receiving an "'up-right' MRI, but it was not." (*Id.*, PageID.4.) Plaintiff attempted to complete the procedure, but "he began to hyperventilate heavy and one of the three doctor's assistant[]s told Plaintiff: 'You are claustrophobic and you might not make it in this machine.'" (*Id.*)

The next day, Plaintiff had an appointment with Defendant Jamros, and Jamros told Plaintiff that he would need "to take a barbiturate drug to overcome his claustrophobia." (*Id.*) Plaintiff declined because of "the fear this possibility created, from the thought of having to take something he was deathly afraid of so that he could, possibly, do another thing that he was deathly afraid of doing." (*Id.*) Plaintiff asked Defendant Jamros if he could be taken "to a place . . . with the up-right MRI machine," and Defendant Jamros stated: "It's obvious you're in some kind of pain with that big lump on your neck, but I . . . know for certain our utilization review director is not going to pay for you to have an up-right MRI." (*Id.*) Defendant Jamros then stated: "If you're not going to take the MRI that we sent you to the first time, then you can sign off on this release o[f] responsibility form." (*Id.*) Plaintiff refused, stating "I'm not going to sign anything." (*Id.*, PageID.5.)

Plaintiff alleges that "Defendants were responsible for adequate medical care and the administrative decision-making process of delegating particular health care provider[s] to adequately give Plaintiff due process, health care (adequate medical procedures), [and] to properly diagnose Plaintiff's ailments." (*Id.*) Plaintiff also states that "[i]t is [his] belief that none of the decisions [that] Defendant[s] made in administering health care to Plaintiff w[ere] based on bona fide medical judgment, but rather, for the purpose of delaying and ultimately avoiding 'expensive' treatment procedures." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the Eighth and Fourteenth Amendments. (*Id.*, PageID.5–6.) Without providing any further explanation, Plaintiff also references 42 U.S.C. § 1985. (*See id.*, PageID.1.) As relief, Plaintiff seeks "treble past damages, treble future damages, and treble punitive damages, as well as his fees and costs for the suit. (*Id.*, PageID.7.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.      **Claims Under 42 U.S.C. § 1985**

As an initial matter, Plaintiff references 42 U.S.C. § 1985 in the introduction section of his complaint, but he does not make any further reference to § 1985 in the complaint. (*See* Compl., ECF No. 1, PageID.1.)

To maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3),[2] a plaintiff must show the following four elements: (1) a conspiracy involving two or more persons (2) for the

---

[2] Subsections (1) and (2) of § 1985 do not apply. Subsection (1) is inapplicable because Plaintiff does not allege a conspiracy to interfere with federal officers in the performance of their duties. *See* 42 U.S.C. § 1985(1). The first clause of subsection (2) is also inapplicable because Plaintiff does not allege that Defendants conspired to influence parties, witnesses, or jurors in federal court proceedings. *See* 42 U.S.C. § 1985(2). In addition, the second clause of subsection (2) is inapplicable because Plaintiff does not allege that Defendants conspired to "interfere with due process in state courts with the intent to deprive persons of their equal protection rights." *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006).

purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998). Moreover, a plaintiff must allege that there existed "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *see also Collyer*, 98 F.3d at 233. Plaintiff's complaint is devoid of facts suggesting that Defendants' alleged actions were motivated by Plaintiff's membership in a distinct class. Therefore, Plaintiff's § 1985 claim will be dismissed.

**B.      Defendants Brown and Storey**

With respect to Defendants Brown and Storey, Plaintiff fails to allege facts showing how these Defendants were personally involved in the violation of his constitutional rights. (*See generally* Compl., ECF No. 1.) When listing the Defendants named in this action, Plaintiff identifies Defendant Brown as the warden at KCF and Defendant Storey as the deputy warden at KCF, however, Plaintiff fails to name either of these Defendants in the body of his complaint. (*See id.*, PageID.1–6.)

Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Additionally, any

"[s]ummary reference to a single, five-headed 'Defendants' [or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))). Plaintiff's claims against these Defendants therefore fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent that Plaintiff seeks to hold Defendants Brown and Storey liable for the actions of their subordinates, government officials, such as Defendants, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). For that reason, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The United States Court of Appeals for the Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any facts showing that Defendants Brown and Storey encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in their conduct. Plaintiff's vague and conclusory allegations of supervisory responsibility are insufficient to show that Defendants Brown and Storey were personally involved in the alleged violations of Plaintiff's constitutional rights. Because Plaintiff has failed to allege that Defendants Brown and Storey engaged in any active unconstitutional behavior, Plaintiff fails to state a claim against them.

Accordingly, for all of the reasons set forth above, Plaintiff's claims against Defendants Brown and Storey will be dismissed for failure to state a claim.

### C.    Defendants Wellness Health Care and Jamros

#### 1.    Eighth Amendment Claims

Plaintiff alleges that Defendants Wellness Health Care and Jamros violated his Eighth Amendment rights by providing inadequate medical care as related to his receipt of an MRI. (*See* Compl., ECF No. 1, PageID.5–6.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care

would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can

be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate

medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). The prisoner must show that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### a.   Objective Component

Plaintiff alleges that he had "a growth on his neck that was triggered with excruciating pain when Plaintiff moved his body," and that medical providers determined he should have an MRI to examine the issue. (Compl., ECF No. 1, PageID.3.) At this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has alleged sufficient facts to show a serious medical condition.

####       b.        Subjective Component

####       (1)       Defendant Wellness Health Care

With respect to Defendant Wellness Health Care, Plaintiff alleges that Wellness Health

Care was "deliberately indifferent by deliberately refusing to administer an up-right MRI." (*Id.*,

PageID.6.)

A private entity that contracts with the state to perform a traditional state function like

providing healthcare to inmates—as Wellness Health Care does—can "be sued under § 1983 as

one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting

*West*, 487 U.S. at 54). The requirements for a valid § 1983 claim against a municipality apply

equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher*

*v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in

*Monell*, 436 U.S. 658, has been extended to private corporations); *Street*, 102 F.3d at 817–18

(same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v.*

*Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same).

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional

violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*,

974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can

be sued under § 1983 only when a policy or custom of that government caused the injury in

question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination

to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir.

1996). Further, the policy or custom must be the moving force behind the constitutional injury,

and a plaintiff must identify the policy, connect the policy to the governmental entity, and show

that the particular injury was incurred because of the execution of that policy. *Turner v. City of*

*Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

Consequently, because the requirements for a valid § 1983 claim against a municipality apply equally to Wellness Health Care, Wellness Health Care's liability, like a governmental entity's liability, "must also be premised on some policy [or custom] that caused a deprivation of [a prisoner's] Eighth Amendment rights." *Starcher*, 7 F. App'x at 465. Additionally, Wellness Health Care's liability in a § 1983 action cannot be based on a theory of respondeat superior or vicarious liability. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citation omitted).

Here, liberally construing Plaintiff's complaint, as the Court is required to do, Plaintiff alleges that Defendant Wellness Health Care denied him an up-right MRI, which Plaintiff believes he would be able to complete despite his claustrophobia, to "avoid[] 'expensive' treatment procedures." (Compl., ECF No. 1, PageID.5, 6.) Plaintiff does not specifically allege that this is a policy or custom of Wellness Health Care; nonetheless, the Court will address Plaintiff's assertion.

Although denying an inmate certain medical treatment due to the treatment's cost may show deliberate indifference, this is not such a case. As an initial matter, in this action, Plaintiff does not allege that he was denied medical treatment; instead, Plaintiff alleges that he was denied the specific diagnostic test—i.e., an up-right MRI—that he wanted to receive. Plaintiff was not denied the opportunity to receive an MRI; he was simply denied the specific type of MRI that he wanted to receive.

On three occasions, Plaintiff was provided with the opportunity to receive an MRI at outside hospitals. On each occasion, Plaintiff was unable to complete the procedure due to his claustrophobia. After the third failed attempt, to enable him to complete the procedure, Plaintiff was told he would need "to take a barbiturate drug to overcome his claustrophobia." (*Id.*,

PageID.4.) Plaintiff refused to do so. Instead, Plaintiff asked to receive an up-right MRI, which a non-party nurse had shown him a picture of. Notably, Plaintiff does not allege that an up-right MRI was actually available at any of the hospitals where Plaintiff went to receive his MRIs. That is, based on the facts alleged by Plaintiff, this is not a situation where both up-right MRIs and traditional-style MRIs were available at the hospitals, and Wellness Health Care required Plaintiff to receive the traditional-style MRI to save money. Instead, Plaintiff alleges that a non-party nurse simply showed him a picture of an up-right MRI, but nothing in the complaint suggests that an up-right MRI was actually available to Plaintiff.

Further, Plaintiff *chose* not to take the medicine to enable him to have a traditional-style MRI; however, Plaintiff's choice not to pursue this option, which medical providers had made available to him, does not result in Plaintiff being able to then choose some other preferred option. Indeed, after Plaintiff refused to take medication to facilitate his receipt of an MRI, his preference to receive a different type of MRI is analogous to disagreement with medical providers' treatment decisions. However, "a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted); *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (discussing that prisoners are not entitled to "unqualified access to health care" (citation omitted)).

Moreover, under the circumstances alleged by Plaintiff, Plaintiff's assertion that Defendants considered cost when determining that Plaintiff would receive a traditional-style MRI (with a barbiturate drug provided due to his claustrophobia), rather than an up-right MRI, does not on its own show deliberate indifference. The Constitution may be "violated when [costs] are considered to the exclusion of reasonable medical judgment about inmate health," *Roe v. Elyea*, 631 F.3d 843, 863 (7th Cir. 2011) (emphasis omitted); however, "prisoners do not have a

14

constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment." *Winslow v. Prison Health Servs.*, 406 F. App'x 671, 674 (3d Cir. 2011) (citations omitted); *see Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997) ("[T]he deliberate indifference standard of *Estelle* does not guarantee prisoners the right to be entirely free from the cost considerations that figure in the medical-care decisions made by most non-prisoners in our society."). Here, Plaintiff's allegations do not suggest that Defendants were foregoing all diagnostic testing due to cost; instead, Plaintiff's allegations show that Defendants exercised their medical judgment to determine that Plaintiff needed an MRI and then offered medicine to Plaintiff due to his claustrophobia to enable him to complete the MRI procedure. Plaintiff chose not to pursue the medicated MRI option; however, Plaintiff cannot manufacture deliberate indifference by claiming that Defendants did not offer Plaintiff the specific type of MRI (i.e., an up-right MRI) that he wanted to receive.

Accordingly, for the reasons set forth above, any policy alleged by Plaintiff whereby Wellness Health Care provides traditional-style MRIs, rather than up-right MRIs, is not indicative of deliberate indifference by Wellness Health Care. Accordingly, Plaintiff's Eighth Amendment claim against Wellness Health Care will be dismissed.

### (2)    Defendant Jamros

As to Defendant Jamros, Plaintiff alleges that he first saw Defendant Jamros at an unspecified time after Plaintiff's first failed attempt at receiving an MRI in March of 2023. (Compl., ECF No. 1, PageID.3.) Plaintiff "explained to [Defendant] Jamros that he was claustrophobic, and she claimed to have understood . . . and said directly to the Plaintiff that she would reschedule Plaintiff for an adequate MRI." (*Id.*)

Subsequently, at an unspecified time, Plaintiff "was sent back to the same exact hospital" for an MRI with "the exact same MRI machine, causing the Plaintiff to hyperventilate when he

was faced with the same situation that caused his claustrophobia before." (*Id.*) Thereafter, on June 29, 2023, Plaintiff was sent to Otsego Hospital for an MRI. (*Id.*, PageID.4.) Plaintiff believed he would be receiving an "'up-right' MRI" because, prior to this hospital visit, a non-party nurse had shown him a picture of an "'up-right' MRI," but he did not. (*Id.*, PageID.3.) Plaintiff attempted to complete the traditional-style MRI procedure, but "he began to hyperventilate" and was unable to do so. (*Id.*, PageID.4.)

The following day, Plaintiff had an appointment with Defendant Jamros, and Jamros told Plaintiff that he would need "to take a barbiturate drug to overcome his claustrophobia." (*Id.*) Plaintiff declined because of "the fear this possibility created, from the thought of having to take something he was deathly afraid of so that he could, possibly, do another thing that he was deathly afraid of doing." (*Id.*)

As an initial matter, to the extent that Plaintiff intended to hold Defendant Jamros liable for medical care that he received prior to Plaintiff's first appointment with Jamros, Plaintiff fails to state a claim because he fails to allege any facts to suggest that Jamros had any involvement in his medical care prior to that first appointment. *See Twombly*, 550 U.S. at 555–61; *Grinter*, 532 F.3d at 575–76; *Greene*, 310 F.3d at 899. Moreover, although it is clear that Plaintiff wanted to receive an up-right MRI, rather than a traditional-style MRI, "a desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." *Mitchell*, 553 F. App'x at 605 (citations omitted). That is, this is not a case where Plaintiff was not provided with the opportunity to receive an MRI. Instead, Plaintiff was taken to outside hospitals to receive an MRI on three occasions. (Compl., ECF No. 1, PageID.3–4.) Following the third failed attempt due to Plaintiff's claustrophobia, Defendant Jamros explained to Plaintiff that to complete the MRI, he would need "to take a barbiturate drug to overcome his claustrophobia." (*Id.*, PageID.4.) Plaintiff

declined this option. (*Id.*) Instead, Plaintiff asked to receive an up-right MRI, which a non-party

nurse had shown him a picture of. (*Id.*) In response, Defendant Jamros stated: "It's obvious you're

in some kind of pain with that big lump on your neck, but I . . . know for certain our utilization

review director is not going to pay for you to have an up-right MRI." (*Id.*) Defendant Jamros

further stated that "[i]f you're not going to take the MRI that we sent you to the first time, then

you can sign off on this release o[f] responsibility form." (*Id.*) Plaintiff refused to do so. (*Id.*,

PageID.5.)

The Court does not minimize Plaintiff's claustrophobia; however, this is not a case where

prison medical providers did not seek further diagnostic testing for Plaintiff or did not offer

Plaintiff an option that would enable him to complete the diagnostic testing. Instead, Plaintiff did

not complete an MRI because he refused to take "a barbiturate drug to overcome his

claustrophobia" for the procedure. (*Id.*, PageID.4.) Plaintiff vaguely alleges that he refused to take

the medicine because of "the fear this possibility created, from the thought of having to take

something he was deathly afraid of so that he could, possibly, do another thing that he was deathly

afraid of doing" (*id.*); however, Plaintiff provides no further explanation or facts about this, and

his vague assertion is insufficient to show that this option was not a medical possibility for him.

Instead, Plaintiff simply disagreed with Defendant Jamros's and other non-party medical

providers' treatment decisions regarding his receipt of a traditional-style MRI, but "a patient's

disagreement with his physicians [or other medical providers] over the proper course of treatment

alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983."[3] *Darrah*,

865 F.3d at 372 (citations omitted); *Estelle*, 429 U.S. at 105 ("[T]he question whether an X-ray or

---

[3] The Court notes that although a non-party nurse had shown Plaintiff a picture of an up-right MRI,
Plaintiff's allegations do not suggest that an up-right MRI machine was actually available.

additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.").

Moreover, although Plaintiff alleges that Defendant Jamros told him that she knew that the "utilization review director [wa]s not going to pay for [Plaintiff] to have an up-right MRI," this statement on its own does not show deliberate indifference. (Compl., ECF No. 1, PageID.4.) As an initial matter, Plaintiff does not allege that Defendant Jamros herself had the ability to approve or deny particular diagnostic tests. Further, setting this issue aside, the fact that Plaintiff's preferred diagnostic testing method was more expensive, and therefore, unlikely to be approved when an equivalent diagnostic test had already been offered to Plaintiff does not show deliberate indifference because prisoners are not entitled to the medical care of their choosing. *See Hudson*, 503 U.S. at 9. And, as discussed above, "prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment." *Winslow*, 406 F. App'x at 674 (citations omitted).

Furthermore, rather than show deliberate indifference, Plaintiff's allegations show that Defendant Jamros took affirmative steps to try to facilitate Plaintiff's receipt of an MRI by offering Plaintiff the possibility of taking "a barbiturate drug to overcome his claustrophobia" for the procedure. (Compl., ECF No. 1, PageID.4.) Plaintiff declined this option, prompting Defendant Jarmos to ask Plaintiff to "sign off on [a] release o[f] responsibility form," which Plaintiff refused to do. (*Id.*, PageID.4–5.) Under the circumstances alleged by Plaintiff, the fact that Defendant Jamros asked Plaintiff to sign a release of responsibility form after Plaintiff refused to take medication to facilitate his receipt of an MRI does not show deliberate indifference because multiple attempts were made to provide Plaintiff with an MRI—i.e., three attempts were made to

18

provide Plaintiff with an MRI and a fourth attempt was made to facilitate an MRI by using medication—and it was Plaintiff's choice not to take the medication which prevented him from receiving the MRI, not the actions of Defendants. Additionally, Plaintiff alleges no facts to suggest that Defendant Jamros had any further involvement with Plaintiff's medical care after this final interaction. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim); *Grinter*, 532 F.3d at 575–76; *Greene*, 310 F.3d at 899.

Accordingly, for all of the reasons set forth above, Plaintiff fails to state an Eighth Amendment medical care claim against Defendant Jamros.

### 2. Fourteenth Amendment Due Process Clause Claims

Plaintiff claims that Defendants violated his right to due process by "depriv[ing] Plaintiff of his rights to adequate health care." (Compl., ECF No. 1, PageID.6.)

To the extent that Plaintiff intended to bring a procedural due process claim, Plaintiff fails to state such a claim. To demonstrate a violation of procedural due process, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Here, Plaintiff's right to receive medical care is not the type of protection afforded by procedural due process. *See DeShaney v. Winebago Cnty. Dept. of Soc. Servs.*, 489 U.S. 189 (1989). Instead, the Sixth Circuit Court of Appeals has recognized that, to the extent the right to medical care is a due process right, it is "a substantive due process right . . . ." *Colson v. City of Alcoa, Tenn.*, 37 F.4th 1182, 1187 (6th Cir. 2022).

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

However, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Eighth Amendment applies to protect Plaintiff's right to receive medical care. *See supra* Section II.C.1. Furthermore, nothing in the complaint suggests that Defendants engaged in the sort of egregious conduct that would support a substantive due process claim. Consequently, any intended substantive due process claim will be dismissed.

Accordingly, for all of the reasons set forth above, any intended procedural and substantive due process claims will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C.

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:    January 30, 2024                    /s/ Robert J. Jonker
                                              Robert J. Jonker
                                              United States District Judge

21